No.  26-2424

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

*TERRANCE WALKER*
Plaintiff-Appellant,

V.

*Intelli-heart Services Inc. et. al.*
Defendants-Appellees.

_____

On Appeal from the United States District Court
for the District of Nevada, Reno

Case No. 3:18-cv-00132-MMD-CLB

_____

OPPOSITION TO SUMMARY AFFIRMANCE DUE TO NEW AND
SUBSTANTIAL ISSUES UNDER *Berk v. Choy*, 607 U.S. 187, 146 S. Ct. 546 (2026)
and *Ratha v. Rubicon Resources, LLC* (*"Ratha III"*), 168 F.4th 541 (9th Cir. 2026)

_____

**Terrance Walker**
518 Duong 3/2 Dist 10, Ward 14, HCMC VietNam 70000
Phone: +1(775)971-8679
email: walkerbillion@gmail.com

1

## I. INTRODUCTION

The bedrock of federal jurisprudence rests upon a singular, non-discretionary constitutional guarantee: "[T]o be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Due process is not a flexible administrative courtesy; it is an absolute mandate commanding that a litigant be afforded a meaningful opportunity to present their case before a court can permanently strip them of their rights. This appeal arises from a profound, systemic breakdown of that baseline guarantee, where the district court repeatedly deployed procedural reframing, manufactured ambiguity, and active judicial advocacy to insulate a contaminated corporate record from binding Supreme Court and circuit law.

The total denial of the right to be heard on a $156,914 claim—which was aggressively blocked by a threshold state gatekeeping procedure now declared explicitly unconstitutional under **Berk v. Choy, 607 U.S. 187, 146 S. Ct. 546 (2026)**—presents highly substantial questions such as whether the underlying anti-SLAPP judgment is void. This is especially true in light of the new, substantial standards of *de novo* review governing an underlying error of law that is natively incorporated into the post-judgment motion under **Ratha v. Rubicon Resources, LLC (Ratha III), 168 F.4th 541 (9th Cir. 2026) (en banc)**. To say, as Appellees suggest, that these issues have been "already resolved" "fully and fairly" by perfunctory district court orders (ECF Nos. 270, 272) devoid of analysis, under these binding new precedents is a monumental historical distortion.

Appellees' motion for summary disposition pursuant to *United States v. Hooton*, 693 F.2d 857 (9th Cir. 1982), represents a profound abuse of appellate motion practice. Appellees ask this Court to summarily affirm a perfunctory district court denial by claiming the issues raised on this third appeal are "insubstantial" while failing to cite the two central landmark precedents relied upon for this appeal or the substantial opening brief which was clerk-approved in one day (ECF No. 4)[1] Appellees' high-speed motion relies entirely on erecting a context-free, generic "vexatious" litigation narrative—a collateral smoke screen that the district court itself never formally considered or established as a basis for its order. Both the supreme federal preemption conflicts and the due process violations are fully detailed in Appellant's comprehensive 53-page Opening Brief currently pending on the docket (See ECF No. 4). Because this appeal demands a rigorous, record-anchored audit of a vertical procedural preemption conflict under a newly matured circuit safety valve which Appellees refuse to cite, summary disposition is legally unavailable and wholly inappropriate considering this circuit's high bar[2]. Thus, the motion must be denied.

## II. LAW AND ARGUMENT

---

[1] *Compare In Re O'Brien,* 312 F.3d 1135, 1136-37 (9th Cir. 2002) (summarily dismissing appeal when the appellant's violations of the Federal Rules of Appellate Procedure and the Ninth Circuit rules were "legion." (quoting N/S Corp. v. Liberty Mut. Ins. Co., 127 F.3d 1145, 1146 (9th Cir. 1997))

[2] *United States v. Hooton*, 693 F.2d 857, 858 n.2 (9th Cir. 1982)( this Court's summary affirmance is "narrower than the standards...by other courts")

**A. Judicial Estoppel Bars Appellees from Alternating Positions to *now* Claim Federal Rule Changes Should Evade Review**

The definitive threshold barrier to Appellees' motion is the doctrine of judicial estoppel. A sophisticated corporate litigant is strictly prohibited from gaining a tactical advantage by taking one position to win a dismissal in an earlier proceeding and reversing course later. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

To secure an affirmance against Appellant in *Walker V In telli-Heart Servs., Inc.,* No. 22-15291 (9th Cir. Oct. 26, 2023) ("*Walker II*") Appellees successfully argued—and the prior panel explicitly agreed—that a change in controlling law sufficient to justify reopening a judgment could not be premised upon a shift in *state* anti-SLAPP jurisprudence. Specifically, the prior dismissal was anchored on the premise that an update in state law "did not change (and could not have changed) this court's interpretation or application of the Federal Rules of Civil Procedure to anti-SLAPP motions in federal court."

Having established that strict baseline to defeat Appellant's prior motion, Appellees are now confronted with the exact scenario they previously demanded: a monumental, standard-shifting change in federal law governing those exact federal rules. The Supreme Court's mandate in *Berk v. Choy* (2026) establishes an unyielding, trans-substantive preemption ceiling for Federal Rule 8, and the

4

*en banc* Ninth Circuit's procedural overhaul in *Ratha III* (2026) fundamentally alters post-judgment retroactivity and parameters under Rule 60(b)(6) in this circuit.

Yet, faced with these two new massive federal mandates, Appellees completely flip their script. They now argue that even two new supreme changes in federal procedural law are somehow insufficient to warrant relief, dismissing these monumental federal shifts as "insubstantial." Having successfully escaped preemption review in prior appellate tracks by insisting that only a change to the Federal Rules of Civil Procedure could impact the judgment, Appellees are heavily estopped from turning around in 2026 to argue that actual, supreme changes to those exact federal rules are suddenly barred by finality. Finality cannot be weaponized as an administrative shield when it is procured through alternating legal standards.

## B. *Ratha III* Displaces and Eviscerates the Prior Panel's Analysis Under *Miller v. Gammie*

Appellees' inevitable assertion that Appellant is merely seeking to "relitigate" settled matters fundamentally misconstrues the jurisdictional mechanics of an intervening change in law. This motion does not represent a repetitive dispute over past factual findings; rather, it invokes a brand-new, standard-shifting legal framework that mathematically matured under this Court's

recent *en banc* mandate in *Ratha III*. Because the unique legal right consecrated by the *en banc* court in *Ratha III* did not exist during Appellant's prior post-judgment tracks, its active invocation within mere months of its publication is entirely distinct from relitigation; it represents the timely execution of a newly recognized equitable safety valve. Under the landmark framework of *Ratha III*, rigid judicial finality must yield under Rule 60(b)(6) when a diligent, prescient litigant has unceasingly identified, preserved, and pushed for a correct legal standard.

The prior panel's ruling in *Walker II* (No. 22-15291) is built upon several fatal legal errors that *Ratha III* has since explicitly overruled and rendered obsolete:

- **The Overruling of Discretionary Deference:** The *Walker II* panel shielded the district court's denial by asserting that it "did not abuse its discretion" in ignoring the *Phelps* factors because it deemed the state-law "gist" of the claim unchanged. However, *Ratha III* establishes that when a district court incorporates an incorrect legal standard—or refuses to apply a massive, intervening shift in controlling law—it commits a *per se* error of law, stripping its subsequent denials of discretionary deference and requiring strict *de novo* review on appeal.

- **The Right to Reach the Underlying Merits on Post-Judgment Review:** The *Walker II* panel sought to isolate Appellant's challenges by utilizing standard jurisdictional barriers, claiming that appeals from a Rule 60(b)(6)

motion cannot reach issues from the underlying judgment. *Ratha III* shattered this premise. The *en banc* court held that the merits of an underlying judgment are properly reviewed on a post-judgment appeal because a district court's subsequent Rule 60(b) denial natively "incorporates" the prior flawed reasoning when it relies on it.

- **The Total Demolition of the "Stagnant Precedent" Shield:** The prior panel claimed that Nevada anti-SLAPP jurisprudence was unaffected by federal preemption principles. *Ratha III* and *Berk v. Choy* together confirm that no state-law procedural filter can bypass the uniform track of Federal Rule of Civil Procedure 8.

Under ***Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) (en banc)**, a three-judge panel's decision is completely overruled when its core reasoning is "clearly irreconcilable" with a subsequent *en banc* decision. Because *Ratha III* has fundamentally rewritten the procedural rules governing retroactivity and post-judgment relief under Rule 60(b)(6) in this Circuit, *Walker II* is dead law.

## C. The Novel and Substantial Intervening Mandates of *Berk v. Choy* and *Ratha III* Disqualify This Appeal from Summary Affirmance

Under the strict rule of *United States v. Hooton*, summary affirmance is an extraordinary remedy confined exclusively to appeals where the insubstantiality of the questions is "manifest from the face of appellant's brief" and obviously

7

controlled by stagnant precedent. 693 F.2d at 858. A motion for summary affirmance must be denied where the appeal presents a substantial jurisdictional, procedural, or substantive question. Appellees rely heavily on *Hooton* to bypass a full review of this record, claiming the issues presented are insubstantial. However, summary affirmance is completely inappropriate here.

This appeal features the exact opposite: it introduces a highly complex, multi-pronged challenge to a contaminated record governed by the newly issued Supreme Court mandate in *Berk v. Choy* and the "Prescient Litigant" exception codified in *Ratha III*.

- **The *Berk* Preemption Command:** *Berk* re-established a pristine baseline for procedural uniformity, holding that Federal Rule of Civil Procedure 8 acts as both a floor and an unyielding, trans-substantive procedural ceiling. Under *Berk*, because the Federal Rules specify that pleading-stage sufficiency is measured solely by facial plausibility, no state statute can force its way onto the federal track to demand early-stage evidentiary validation or gatekeeping.

- **The *Gopher Media* Concession:** In ***Gopher Media LLC v. Melone*, 154 F.4th 696 (9th Cir. 2025) (en banc)** (cert. denied, June 15, 2026, Docket No. 25-1067), this Court held that an anti-SLAPP special motion to strike is inextricably bound up with the factual and legal "merits" of the dispute. By admitting that the motion operates directly on the merits to screen out

8

claims at the gatekeeping stage, Appellees trigger immediate preemption under *Berk*. The state mechanism attempts to do exactly what *Berk* forbids: force a federal judge to evaluate evidence and screen a claim's factual validity ("merit-screening") before the uniform federal discovery timeline has even begun.

- **The *Ratha III* Safety Valve:** *Ratha III* explicitly holds that a district court's incorporation of an incorrect legal standard strips its subsequent post-judgment denials of discretionary deference, commanding a strict de novo review on appeal.

Because this appeal places squarely before this Court the binding operational reach of major, brand-new intervening precedents—specifically *Berk v. Choy* and Ratha III—the legal issues are robust, highly substantial, and demand full briefing on the merits.

## D. Appellees Have Procedurally Waived the Right to Contest the Substantiality of the Appeal

Furthermore, Appellees are legally prohibited from using a *Hooton* motion to assert a substantive defense on appeal that they completely abandoned in the court below. The district court is not a transitional way station where a party can remain silent while holding back arguments for the appellate track. *Crawford v. Lungren*, 96 F.3d 380, 389 (9th Cir. 1996).

Faced with Appellant's comprehensive motion for relief under the matured *Ratha III* and *Berk* frameworks, Appellees chose not to advance a single record-backed point, authority, or preemption analysis below, submitting nothing but cut-and-paste boilerplate. Under local rules and established federal waiver doctrines, a party's failure to file substantive points and authorities operates as an absolute procedural concession. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). Issues not raised in the district court will generally not be considered on appeal. *See Crawford*, 96 F.3d at 389. Having defaulted on their adversarial obligations below, Appellees cannot use a high-speed motion to resurrect a waived defense.

## E. Appellees' Use of Context-Free Finality Arguments Ignores the "Prescient Litigant" Doctrine Codified in *Ratha III* and Settled Timing Flexibilities

In a predictable and shallow maneuver to induce judicial fatigue, Appellees assemble a context-free "rap sheet" of past adverse rulings in a transparent attempt to brand Appellant as a "frivolous" or "vexatious" litigant. This narrative attack fundamentally misconstrues the strict mandates of federal equity jurisprudence, completely bypasses the real history of the district court proceedings, and deliberately flips the constitutional script.

In federal equity jurisprudence, unyielding litigation diligence to correct an infected trial record and a systemic denial of due process is not "vexatious"—it is a protected right explicitly demanded of a model *Ratha III* prescient litigant. As the United States Supreme Court held in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944), when a court is confronted with a carefully executed corporate scheme to defraud the judiciary, the "preservation of the integrity of the judicial process must always wait upon the diligence of litigants."   In *Ratha III* it was noted "[t]hat Plaintiffs' petition for certiorari did not address their claims against Defendant. Dissent at 52 n.6. But the dissent's speculation about Plaintiffs' strategy does not undermine our conclusion..."  168 F.4th Id. at 549 n.8.  Appellant's diligence went even further because the same Rule 8 conflict with the "merit" screening of Nevada Anti-slapp procedure faced by Walker in ECF No. 206) *was* addressed in his Supreme Court petition No. 21-832.  Appellant cannot be faulted for doing what the rules require of him.

Appellees complain that the original judgment was entered six years ago on March 4, 2020, attempting to impose an absolute mechanical barrier to relief. This argument is an analytical failure. Under federal equity rules, there is no fixed mechanical calendar clock applicable to a motion brought under Rule 60(b)(6)—and it is long settled that both Rule 60(b)(6) and Rule 60(b)(4) challenges are unencumbered by a rigid time limit, governed instead by equitable "reasonableness" measured from when the ground for relief actually matured. A

fleeing thief does not escape accountability just because they reached the threshold of their home. Nor can a civil defendant manipulate the judicial system to bypass a pending summary judgment for $156,914 under a now unconstitutional procedure and then claim immunity under the guise of finality.

Appellees' narrative also represents an improper attempt to ask the Ninth Circuit to engage in the exact same constitutional denial alleged against the district court—a structural bypass detailed extensively in Appellant's pending briefing (See ECF No. 4, pg. 30). In **Molski v. Evergreen Dynasty Corp., 500 F.3d 1047 (9th Cir. 2007)**, this Court established stringent requirements before a court may restrict a litigant's access to the courts by branding them vexatious. Such an order cannot be constitutionally imposed without providing: (1) notice to the litigant, (2) an opportunity to be heard, (3) the development of an adequate record detailing specific frivolousness, and (4) an order that is narrowly tailored. By asking this Court to summarily rubber-stamp a collateral "vexatious" narrative without satisfying a single prong of the *Molski* standard, Appellees are aggressively pursuing a summary administrative deprivation of due process.

Appellees' rigid timing calculation is further discredited by binding circuit precedent:

- **The *Bynoe* Standard:** In **Bynoe v. Baca, 966 F.3d 972, 986 (9th Cir. 2020)**, this Court explicitly held that a seven-year gap between an initial

final ruling and the subsequent filing of a Rule 60(b)(6) motion is legally excused when a litigant demonstrates persistent, ongoing diligence. This Court ruled that the district court committed a clear error of law by treating a seven-year gap as an absolute mechanical bar and "failing to accord appropriate weight to Bynoe's diligence and his ultimate timeliness." Here, the six-year structural baseline targeted by Appellees is entirely eclipsed by the longer, seven-year gap explicitly validated and protected by this Court in *Bynoe*.

- **The *Ratha III* Proportional Timeline:** Appellant's active 2026 invocation of the *en banc Ratha III* standard is significantly shorter than the four-year structural gap that elapsed between the panel's summary affirmance in *Ratha II* (2022) and the ultimate, historic *en banc* post-judgment reversal in *Ratha III* (2026).

Because a litigant cannot be accused of sitting on a mature legal right before that right exists, timeliness must be measured directly from the date the legal barrier was lifted. Appellant filed his underlying district court motions (ECF Nos. 269, 271) within mere months of the 2026 *en banc* clarification and Supreme Court mandate in *Berk*. By executing this immediate, precise trajectory upon the maturation of the *Ratha III* and *Berk* doctrines, Appellant acted with maximum equity and speed, fully satisfying the flexible "reasonable time" mandate of Rule 60(c)(1). Thereafter, Appellant timely filed this appeal.

13

Appellees' attempt to lob labels like "vexatious" represents the height of bad faith. Appellees are attacking Appellant for doing exactly what they represented to this Court he had the right to do. Having won prior dismissals based on the promise that Appellant retained the absolute right to pursue his claims under federal rule changes, Appellees are heavily estopped from characterizing the execution of that exact right as "frivolous" or "vexatious."

## III. CONCLUSION

For the reasons documented herein, the questions presented in Appellant's Opening Brief are exceptionally substantial, novel, and anchored to Appellees' total record defaults. Summary disposition under *Hooton* is an extraordinary measure that is entirely unavailable when an appeal places major, standard-shifting changes in Supreme Court and circuit law squarely before the court.  Appellant respectfully prays that this Court **DENY** Appellees' motion for summary disposition / affirmance, order Appellees to file a substantive Answering Brief, calendar this matter for oral argument to preserve due process, and caution Appellees for bringing a motion which is not anchored in the issues of the current appeal in order to deny Appellant's right to be heard.

Respectfully submitted,

/s/ Terrance Walker
**Terrance Walker**                    **Dated June 15, 2026**

*Appellant, in propria persona*

14